50 P.3d 450

**UNION PACIFIC RAILROAD COMPANY, Plaintiff–Appellant,**

v.

**ETHINGTON FAMILY TRUST, Defendant–Respondent.**

No. 27177.

Supreme Court of Idaho, Boise, January 2002 Term.

June 10, 2002.

Rehearing Denied July 15, 2002.

**436**

Jim Jones & Associates, Boise, for appellant. Jim Jones argued.

Kenneth F. White, Nampa, for respondent.

SCHROEDER, Justice.

Union Pacific Railroad Company (UP) seeks to quiet title to portions of the Homedale railroad line, which extends from Marsing, Idaho, to the Oregon border, passing through property owned by the Ethington Family Trust (Ethington).

## I.

### FACTUAL BACKGROUND

UP contends that its predecessor in interest, Oregon Short Line Railroad Company (OSL), acquired title to a strip of property in 1911 and 1912, and that part of the strip runs through Ethington's property. UP has quieted title in this land as to everyone but Ethington. It appears that the railroad track was already in existence when OSL got title to the property, because the deeds conveying the property use the "center line of the main track of the South Side Line of the Oregon Short Line railroad" as the landmark in the legal description. UP hypothesizes that OSL had acquired a right of way from the federal government to construct the line before the acquisition of title.

UP sold off parts of the line but began encountering difficulties in getting title insurance. UP initiated several quiet title suits. Ethington appeared and asserted a right to title, claiming an entitlement in a reversionary interest and to a contractual right to purchase the property.

Ethington describes the chain of title from the perspective of the land around the strip, noting that the original owner of 80 acres of the property (the north half of the northeast quarter), Mr. Joseph Patch, owned the property based on a 1907 deed. Patch granted the 80 acres to a Fred Richardson in 1909. In 1915, the U.S. granted Charles McCoard 271 acres. McCoard conveyed a portion of his property in 1911 to OSL, as such:

> A strip of land ONE HUNDRED (100) feet wide, being FIFTY (50) feet on each side of the centerline of the main track of the Southside line of the Oregon Short Line railroad as same is now located over and across lot THREE (3) . . .

Another parcel originally owned by Patch was conveyed by Patch's heir to Richardson with the same one-hundred-feet-wide right of way described above.

UP moved for summary judgment against Ethington. The district court denied the motion. Following trial, the district court held that Ethington had no contractual right to purchase the strip, and that the deeds had

merely conveyed an easement to OSL, UP's predecessor. The court stated that "railroads in Idaho have always been prevented from dealing in real property for any purpose other than for the operation of the railroad." In a judgment entered in February 2001, the court adjudged UP's interest to be merely an easement, and that UP's right of abandonment constituted an extinguishments of the easement and title.

UP moved for relief under I.R.C.P. 60(b) and 59(e), arguing that railroads could own real property for purposes other than the operation of the railroad and that Ethington had established no claim to the strip of property. The court agreed on the issue of Ethington's claim but denied UP's request for a ruling that it held fee title to the strip. The district court entered an amended judgment holding UP's interest to be an easement and striking the ruling that Ethington had an interest in the strip.

UP filed a second motion for relief, claiming that the judgment had quieted title in favor of UP against all potential claimants except Ethington, and that Ethington's lack of ownership interest in the property left the Trust without standing. The court denied the motion, and UP appealed; Ethington did not cross-appeal.

## II.

### THE DISTRICT COURT ERRED IN DETERMINING THAT UNION PACIFIC COULD NOT OWN PROPERTY FOR NON–OPERATING PURPOSES

■ The district court applied Idaho Code § 62–104, which enumerates powers of railroad corporations, and determined that UP could not own property for non-operating purposes. The district court erred in doing so. Idaho Code § 62–104 was intended as an expansion of a railroad's powers, not a limitation. A review of Idaho's statutory scheme makes it clear that railroads may own property for non-operating purposes. *See, e.g.,* I.C. § 63–402, which provides the following:

> 63–402. **Nonoperating property assessed by county assessor.** All property belonging to any person owning, operating or constructing any public utility or railroad,

wholly or partly within this state, not included within the meaning of the term "operating property" as defined in this title, namely, property not reasonably necessary for the maintenance and operation of such public utility or railroad, including land or buildings rented by a company or corporation as lessee which is used as or in connection with its business, such as business offices, warehouses, service centers, moorage grounds or docks, vacant lots and tracts of land, and lots and tracts of land with the buildings thereon not used or intended to be used in the operation of such public utility or railroad, also tenement and resident property, except section houses, also hotels and eating houses, not situated adjacent to the main track of any such railroad, shall be assessed by the assessor of the county wherein the same is situated.

Case law has assumed that railroads can own property for non-operating purposes. *See, e.g., O'Brien v. Best,* 68 Idaho 348, 353, 359, 194 P.2d 608 (1948); *Loomis v. Union Pacific Railway Co.,* 97 Idaho 341, 343, 544 P.2d 299, 301 (1975). Again, in *C & G, Inc. v. Rule,* 135 Idaho 763, 25 P.3d 76 (2001), the right of a railroad to hold fee simple title to real property for non-operating purposes was assumed—abandonment of the rail line did not divest the railroad of its title to the property.

The determination of the district court that UP could not own real property for non-operational purposes was in error.

## III.

### THE DEED CONVEYED FEE SIMPLE TITLE

UP argues that the deeds are unambiguous and convey fee simple title. Idaho Code § 55–604 says that a "fee simple title is presumed to be intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended."

### A. Standard Of Review

■ The standard of review of a lower court's interpretation of an instrument de-

pends on whether the instrument is ambiguous. *DeLancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). The question of whether an instrument is ambiguous is a question of law, over which this Court exercises free review. *Id.* Interpretation of an ambiguous document presents a question of fact, and this Court defers to the findings of the trial court so long as those findings are supported by substantial and competent evidence. *C & G, Inc.,* 135 Idaho at 765, 25 P.3d at 78. Interpretation of an unambiguous document, on the other hand, is a question of law and, therefore, a matter of free review. *DeLancey,* 110 Idaho at 65, 714 P.2d at 34. In deciding whether a document is ambiguous, the Court seeks to determine whether it is "reasonably subject to conflicting interpretation." *Bondy v. Levy,* 121 Idaho 993, 997, 829 P.2d 1342, 1346 (1992).

### B. The Deeds Convey Fee Simple Title

■ The deeds recite that the grantors did "grant, sell and convey" their "described piece, parcel of land" to OSL "[t]o have and to hold the said above described premises unto the said railroad, its successors and assigns, forever." The language of these deeds does not limit the use of the parcels for railroad purposes. Also notable are the deeds' use of the term "forever," which is consistent with the conveyance of a fee simple rather than an easement. *C & G, Inc.,* 135 Idaho at 767, 25 P.3d at 80, (citing *Tazian v. Cline,* 686 N.E.2d 95, 101 (Ind.1997) (noting that "forever" as a temporal descriptor suggests the conveyance of a fee simple)). In addition, there is no language in either of the deeds indicating any intention of a reversionary interest in the properties such as a right of re-entry or possibility of reverter. The deeds are straightforward and unambiguous in their recitals leaving no room for doubt as to the intention of the grantors.

### IV.

### CONCLUSION

The decision of the district court is reversed. The case is remanded to the district court for entry of judgment establishing fee simple title in Union Pacific. Union Pacific

is awarded costs. No attorney fees are allowed.

Justices WALTERS, KIDWELL and EISMANN and Pro Tem Justice JUDD concur.