690 P.2d 346

**SUN VALLEY CENTER FOR the ARTS AND HUMANITIES, INC., an Idaho non-profit corporation, and the Ketchum-Sun Valley Community School, a non-profit corporation, Plaintiffs-Appellants,**

v.

**SUN VALLEY COMPANY, an Idaho corporation, Defendant-Respondent.**

No. 15068.

Supreme Court of Idaho.

Oct. 24, 1984.

E. Lee Schlender, Ketchum, for plaintiffs-appellants.

Richard H. Greener, Boise, for defendant-respondent.

HUNTLEY, Justice.

In December of 1972, Sun Valley Company, owned by Bill Janss, (hereinafter "Janss Corporation"), conveyed a gift of certain property to the appellant Sun Valley Center for the Arts and Humanities, Inc. The Center subsequently sold a portion of its newly acquired property to the Sun Valley-Ketchum Community School, the other appellant herein. The 1972 gift deed to the Center was made subject to a right of reverter and to covenants and restrictions on the land which were to be filed by the grantor. These covenants and restrictions were so filed in early 1973. The covenants in controversy restrict land use to uses for certain purposes and in designated ways. They also provide for review and approval of proposed plans by a design committee. The design committee, though referred to in the 1973 declaration, was created by Janss in a 1969 Sun Valley Residential Area Declaration of Protective Covenants ("Declaration"), which purported to apply to real property in Blaine County and owned by Janss. In 1974, the Janss Corporation executed a Gift Deed and Release of Right of Reverter, conveying all rights and real property interests created by the reverter clause in the 1972 gift deed, to the Center.

The land conveyed by the Janss Corporation was part of a larger parcel of land, the retained portion of which was subsequently purchased by Sun Valley Company, (which is a stock-holding corporation owned by

Earl Holding [1] ), the defendant-respondent. The Janss Corporation is not a party. The primary issue in dispute is whether the restrictive covenants are enforceable by Sun Valley Company.

Appellants wish to widen and improve the road leading to the Center and School, and did not seek approval of the design committee. This lawsuit ensued, with the Center and School asserting that the covenants were personal to the original grantor, Janss Corporation, and are thus unenforceable by the Sun Valley Company. Conversely, respondent contends that all of the covenants, including those designating the design committee, run with the land and are enforceable by adjoining landowners. On April 6, 1983 the trial court granted summary judgment to Sun Valley Company on this issue, (which is raised in Count I of the Complaint), and certified the judgment for immediate appeal pursuant to I.R. C.P. 54(b).

Prior to entering the summary judgment on Count I, the district court judge had signed another proposed order of summary judgment prepared by counsel, which the respondent asserts is the final judgment of the trial court and from which the appellants should have taken their appeal. Were respondent correct in that assertion, this appeal would be barred as it would not have been timely filed, but that judgment was never officially filed or entered in the records of the court. It is thus of no legal consequence. The signed order of summary judgment entered on April 6, 1983, was properly filed with the clerk of the court and the appeal therefrom was timely and proper.

We hold that as to the basic land use covenants, respondent was entitled to judgment as a matter of law, and we affirm the judgment of the trial court. As to the covenants establishing and directing the design committee, we reverse, because the intent of those covenants is unclear, and

presents an issue of fact which cannot be decided by summary judgment.

■ It is well established that restrictive agreements by which one party is limited in the use to which he may put his property are valid. *Payette Lakes Protective Association v. Lake Reservoir Company*, 68 Idaho 111, 121, 189 P.2d 1009 (1948). In construing a covenant which imposes restrictions on the use of land, the governing rules are generally the same as those which apply to any contract or covenant. *Smith v. Shinn*, 82 Idaho 141, 147, 350 P.2d 348 (1960). Thus, where there is no ambiguity in the language used, there is no room for construction, and the plain meaning of the language governs. 20 Am. Jur.2d, *Covenants, Conditions, Etc.*, § 185. In the case at bar, it is clear that the covenants restricting land use were intended to run with the land. The 1972 gift deed states that it is "subject to covenants and restrictions on the land to be filed by Grantor, and when filed shall become covenants and conditions running with the land." The subsequently filed declaration of protective covenants, conditions and restrictions states that it "is the instrument setting forth certain covenants and conditions running with the land referred to in that certain GIFT DEED by Sun Valley Company, Inc. [Janss Corporation] to Sun Valley Creative Arts Center." The language leaves no room for doubt that the parties to the agreement intended the covenants to run with the land. Based on this language the trial court correctly concluded that those basic covenants run with the land.

■ The lower court was similarly correct in that the basic covenants may be enforced by Sun Valley Company. Such covenants may be enforced by one other than a party to them where the original parties intended that the restrictions should benefit the land of the person claiming the right of enforcement. 51 A.L.R.3d 556, 569, 573. Once again, the plain language

1. One must distinguish between Sun Valley Company, Inc., Janss' corporation, and the "holding corporation" owned by Earl Holding under the corporate name "Sun Valley Company".

of the instrument creating the covenants is controlling and leaves no doubt that the property acquired by Sun Valley Company was intended to be benefited by the covenants. The declaration of covenants and restrictions states that the purpose of the covenants is to:

[e]nsure that the property subject [thereto] ... be developed and used to enhance and protect its value, desirability and attractiveness; to preserve, as near as may be, the natural beauty and view and the natural and unspoiled state of such property and to ensure a pleasant environment to all other persons who have acquired or will acquire other property from Sun Valley Company [Janss Corporation].

The record establishes that Sun Valley Company has in fact become the successor in interest to lands adjoining the subject premises which were held by the Janss Corporation at the time of the 1972 gift deed.

The language of the covenants establishing and directing the design committee, however, is not clear and unambiguous. The preamble to the 1969 declaration intends that some rights Janss created would be personal to him, and would pass to a *specifically designated* successor in interest:

When used hereinafter, the term Janss shall mean Janss Corporation and any successor in interest to Janss by merger or consolidation and any successor to all or any particular interest under this Declaration under an instrument of assignment or conveyance specifically designating the assignee or grantee as such successor in interest to Janss under this Declaration.

The design committee was created in the declaration as follows:

**6.1 Design Committee Members:** The Design Committee shall consist of three members. At least one member *shall* be a licensed architect or landscape architect who shall be designated specifically as the Architect Member. There may be designated one or more alternate members for each regular member of the Design Committee who shall be authorized to act in the place and stead of the member for whom they are an alternate in the event of his absence or inability to act. *Members and alternate members of the Design Committee shall be appointed by and shall serve at the pleasure of Janss, provided that, at any time, Janss may assign the right to appoint and remove one or more members and alternate members of the Design Committee to the Association. Janss or, after assignment of the right to appoint and remove a majority of the members and alternate members to the Association,* then the Association, shall promptly furnish the names and addresses of the current members and alternate members of the Design Committee to any interested person and the name and address to which all notices and communications to the Design Committee should be directed. (Emphasis added).

The design committee "established by Sun Valley" is referred to in the 1973 Declaration of Protective Covenants, Conditions and Restrictions specific to the donated land, and given authority to review and approve the center's plan. "Sun Valley Company" appears to refer to Janss' Corporation, Sun Valley, Inc. Nowhere in the record, however, is it indicated that Janss specifically designated the holding corporation as the new successor in interest to control of the design committee; if in fact Janss has relinquished control over the committee; or if the design committee even continues to exist. The intent of the parties with respect to the design committee and its operation is unclear.

■ We cannot say as a matter of law that the covenant creating the design committee clearly and unambiguously runs with the land. Where a contract (or covenant) is ambiguous, a question of fact is presented. Summary judgment is improper where an issue of fact exists. Therefore, as to the status of the design committee, its operation, and its purpose with re-

gard to Janss himself, we remand to the trial court for further proceedings.

We have considered the additional assignments of error and find them to be without merit.

No attorneys fees. Costs to be apportioned between appellant and respondent.

DONALDSON, C.J., and SHEPARD, BAKES and BISTLINE, JJ., concur.