118 P.3d 127

George S. SMITH and Trina A. Smith, husband and wife, Plaintiffs–Respondents,

v.

U.S.R.V. PROPERTIES, LC; H.S. Forbush and Kirby Forbush, in their Capacity as the East Ridge Estates, Filing 1, Review Board; and H.S. Forbush, Kirby Forbush and David Elder in their Capacity as the Mountainview Estates Review Board; Terry Wade, an Individual; and John Walker, an Individual, Defendants–Appellants.

No. 30750.

Supreme Court of Idaho, Boise, May 2005 Term.

July 22, 2005.

Just Law Offices, Idaho Falls, for appellants. Kipp L. Manwaring argued.

Jay A. Kohler, Idaho Falls, for respondents.

TROUT, Justice.

This action involves a dispute over the validity of an amendment to a residential subdivision's restrictive covenants. Appellants, U.S.R.V. Properties, LC; H.S. Forbush and Kirby Forbush, in their capacity as the East Ridge Estates, Filing 1, Review Board; H.S. Forbush, Kirby Forbush and David Elder in their capacity as the Mountain View Estates Review Board; Terry Wade; and John Walker (collectively referred to as U.S.R.V.), appeal the district court's denial of their motions to dismiss and grant of summary judgment in favor of Respondents, George S. Smith and Trina A. Smith (Smiths).

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Originally, U.S.R.V. was the owner and developer of all the land involved in this dispute. In 1994, U.S.R.V. filed a subdivision plat and a declaration of covenants (Original Covenants) under the name of East Ridge Estates. The plat subdivided the property into two lots. The Original Covenants did not contain a height restriction for outbuildings. Section 7.5 of the Original Covenants states: "[t]his declaration may be amended by an instrument in writing signed and acknowledged by recorded owners holding eighty-five percent of the lots in the subdivision. Said amendments shall be effective upon its recording...." The Original Covenants also contained the following restriction: "[t]his property has been sub-divided into two lots as shown on the plat. No lot, as delineated on the filed plat, shall be subdivided or in any way reduced in size."

While still the sole owner of both lots, U.S.R.V. recorded a neighboring subdivision plat entitled Mountain View Estates Division No. 1. Mountain View Estates Division No. 1 incorporated within it a portion of the southerly parts of Lots 1 and 2 of East Ridge Estates (without vacating East Ridge Estates or replatting it). In October 1999, U.S.R.V. amended the Original Covenants of East Ridge Estates (Amended Covenants). The Amended Covenants referred to a legal description which only included the northerly portions of the originally platted Lots 1 and 2 of East Ridge Estates (the parts not replatted into Mountain View Estates Division No. 1). After filing the Amended Covenants, U.S.R.V. immediately sold the property described in the Amended Covenants to the Moseleys. Apparently, U.S.R.V. continued to hold a .08–acre strip of land located within the original East Ridge Estates plat but which was not included in the property described in the Amended Covenants or in the replatted portion in the neighboring Mountain View Estates Division No. 1 subdivision nor was it shown on any plat as a "Lot." The Moseleys subsequently sold the property to the Websters and then the Websters sold a portion of the property to the Groesbecks and the remaining portion of the property to the Smiths. The lots currently owned by the Groesbecks and the Smiths have never been replatted and are still referred to as existing within East Ridge Estates. The lot lines of the parcels owned by the Groesbecks and the Smiths do not follow the lot lines of the original Lots 1 and 2. All of the deeds after

1999 refer to the newly platted lots as "parts of lot 1 and 2 of East Ridge Estates."

The 1999 Amended Covenants stated that the Original Covenants remained in force and that the Amended Covenants merely modified them. The Amended Covenants provided that the highest point of any outbuilding could not be taller than fifteen feet from the ground. After purchasing the property, the Smiths began constructing an outbuilding that was taller than the fifteen-foot restriction. U.S.R.V. sent a letter to the Smiths demanding construction on the building cease but the Smiths continued to build. U.S.R.V. filed suit to enforce the fifteen-foot height restriction (the first lawsuit). The district court entered a judgment in favor of U.S.R.V. and ordered the Smiths not to construct or maintain any buildings exceeding a height of fifteen feet. The order was appealed to this Court but was then dismissed voluntarily by the Smiths.

Two weeks after judgment was entered in the first lawsuit, the Smiths filed an "Amendment to Declaration of Covenants of East Ridge Estates" (Smiths' Amendment) that was signed by the Smiths and the Groesbecks. The Smiths' Amendment changed the fifteen-foot height restriction to twenty-five feet. U.S.R.V. then filed an "Affidavit Regarding the Purported Amendment to Declaration of Covenants of East Ridge Estates" stating the Smiths' Amendment was invalid because 85% of the recorded owners did not sign or agree to the amendment.[1] In November 2003, the Smiths filed a declaratory action against U.S.R.V. (the second lawsuit), requesting the district court enter an order stating their amendment to the covenants was valid and enforceable. U.S.R.V. filed a motion to dismiss, arguing the Smiths' declaratory action was barred by the doctrines of res judicata and judicial estoppel. After attempting to decipher the Original and Amended Covenants' meaning on summary judgment, the district court entered judgment in favor of the Smiths and U.S.R.V. appealed.

1. It should be pointed out that much of the confusion in this lawsuit arising from the covenants, plats, purported lot divisions and Affidavit, appears to have been created by Kirby J. For-

## II.

### STANDARD OF REVIEW

In an appeal from a grant of summary judgment, this Court's standard of review is the same as the district court's standard in ruling upon the motion. *Thomson v. Lewiston*, 137 Idaho 473, 475–76, 50 P.3d 488, 490–91 (2002). This Court reviews the record before the district court, including the pleadings, depositions, admissions and affidavits, if any, to determine de novo whether, after construing the facts in the light most favorable to the nonmoving party, there exist any genuine issues of material fact and whether the successful movant below is entitled to judgment as a matter of law. *Tusch Enters. v. Coffin*, 113 Idaho 37, 40, 740 P.2d 1022, 1026 (1987). *See also*, I.R.C.P. 56(c). Rule 12(b) of the Idaho Rules of Civil Procedure states "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." Whether res judicata or collateral estoppel bars the relitigation of issues adjudicated in prior litigation between the same parties is a question of law upon which this Court exercises free review. *Lohman v. Flynn*, 139 Idaho 312, 319, 78 P.3d 379, 386 (2003).

## III.

### ANALYSIS

#### A. Interpretation of Covenants

U.S.R.V. argues the Smiths' Amendment does not comply with Section 7.5 of the Original Covenants and is therefore invalid. The Smiths argue Section 7.5 has been complied with and their amendment is enforceable. Restrictive covenants, which restrict the uses to which a party may put his or her property, are valid and enforceable. *Sun Valley Ctr. v. Sun Valley Co.*, 107 Idaho

bush, who is not an attorney and appears to have done some of this legal work without the benefit of legal advice.

411, 413, 690 P.2d 346, 348 (1984). The Original Covenants and East Ridge Estates plat are still in effect.[2] Section 2.2 of the Original Covenants states "[u]ses and restrictions specified on the plat are incorporated herein by reference and the plat and this declaration shall be construed together." As mentioned above, those covenants prohibit further subdivision or reduction in the size of the two lots shown on the plat. In violation of those covenants, U.S.R.V. created new legal descriptions and reduced the lot sizes, without vacating the East Ridge Estates plat or filing a new plat. Moreover, U.S.R.V. apparently also, in derogation of the Original Covenants, attempted to carve out a .08–acre section from the East Ridge Estates plat (purporting to create a third "lot"), in an effort to retain some voting interest in the Original and Amended Covenants. The record contains only one plat of East Ridge Estates and that is the original plat.

> Because restrictive covenants are in derogation of the common law right of a person to use land for all lawful purposes, covenants are not to be construed to extend by implication any restriction not clearly expressed in the covenants. All doubts and ambiguities are to be resolved in favor of the free use of land. Thus, restrictions that are found to be clearly expressed in the [r]estrictive [c]ovenants are to be applied against the free use of land, while restrictions that are not clearly expressed will be resolved in favor of the free use of land.

*Brown v. Perkins,* 129 Idaho 189, 192, 923 P.2d 434, 437 (1996) (internal citations omitted). Section 3.1 of the Original Covenants provides for only "two lots as shown on the plat" and there are presently only two lots in existence which are still part of East Ridge Estates—one owned by the Smiths and the other owned by the Groesbecks. Whatever interest U.S.R.V. owns in a strip of property that was kept out of the legal description

transferring its property to the Moseleys, is not a "lot" for purposes of applying Section 7.5. U.S.R.V.'s strip of property is not labeled as a lot nor has any party identified it as a lot. The Original Covenants do not mention this strip of property and it expressly provides for a two-lot subdivision. Therefore, because the Smiths' Amendment was signed by the Smiths and the Groesbecks, they have clearly satisfied the 85% requirement of Section 7.5 because 100% of the lot owners executed the Smiths' Amendment. Therefore, we need not reach the issue addressed by the district court of how to interpret the "85%" requirement. "Where an order of a lower court is correct, albeit based on a different theory than that found to be dispositive by this Court, the lower court order will be affirmed." *Sheppard v. Sheppard,* 104 Idaho 1, 7, 655 P.2d 895, 901 (1982) (citations omitted). The Smiths' Amendment to the covenants is valid and enforceable and the district court's grant of summary judgment in favor of the Smiths is affirmed.

**B. Claim Preclusion**

U.S.R.V. argues its motion to dismiss should have been granted because the Smiths are barred from bringing this action since they could have raised the amendment issue in the first lawsuit. "The doctrine of claim preclusion bars not only subsequent relitigation of a claim previously asserted, but also subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made." *Hindmarsh v. Mock,* 138 Idaho 92, 94, 57 P.3d 803, 805 (2002) (citations omitted). In this case, the Smiths are seeking a declaratory judgment validating their amendment to the covenants, adopted after the first lawsuit. That claim does not relate to the same cause of action that was actually raised or that might have been raised in the first lawsuit. Because the Smiths did not file their amendment to the restrictive covenants

**2.** Idaho Code Section 50–1302 states "[e]very owner creating a subdivision ... shall cause the same to be surveyed and a plat made thereof which shall particularly and accurately describe and set forth all the ... blocks, lots, and other essential information and shall record said plat." Under Idaho Code § 50–1301(6), a "plat" is defined to include a replat. Obviously, the East

Ridge Estates plat does not "particularly and accurately" describe the current lot boundaries or subdivisions. Therefore, there is a serious question about whether the Original and Amended Covenants are of any force and effect at all since they refer to a subdivision that no longer exists. We do not address that issue, however, as it was not raised by the parties.

until after the first lawsuit had ended in judgment, they could not have made a claim on the validity of the amendment because the amendment had not yet occurred.

In addition, if claim preclusion barred the Smiths' present action on the validity of their amendment, it would also bar any amendments in the future, because any amendments by the Smiths or their successors in interest could likewise have been, in theory, raised in the first lawsuit. In essence, it would eliminate Section 7.5 from the covenants. Consequently, the district court's denial of the motion to dismiss based on claim preclusion is affirmed.

## C. Judicial Estoppel

▆▆▆ U.S.R.V. argues the Smiths should be estopped from bringing the present action because in the first lawsuit, the Smiths took the position that the restrictive covenants were invalid. Now, in the second lawsuit, the Smiths are taking the position that the restrictive covenants are valid and provide a method for them to amend the restrictive covenants. "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997) (quoting *Rissetto v. Plumbers and Steamfitters Local 343,* 94 F.3d 597, 600 (9th Cir.1996)).

> It is quite generally held that where a litigant, by means of such sworn statements, obtains a judgment, advantage or consideration from one party, he will not thereafter, by repudiating such allegations and by means of inconsistent and contrary allegations or testimony, be permitted to obtain a recovery or a right against another party, arising out of the same transaction or subject matter.

*Loomis v. Church,* 76 Idaho 87, 93–94, 277 P.2d 561, 565 (1954) (citations omitted). The doctrine does not apply in this case because in the first lawsuit, the Smiths never obtained a judgment, advantage or consideration from U.S.R.V. *See Middlekauff v. Lake Cascade, Inc.,* 110 Idaho 909, 915, 719 P.2d 1169, 1175 (1986) (holding the party to be estopped must have obtained a judgment, advantage, or consideration from the other party in order for estoppel to apply). The Smiths have simply accepted the district court's determination in the first lawsuit that the covenants are valid and are now attempting to assert their rights under them. Therefore, the district court's denial of the motion to dismiss based on judicial estoppel is affirmed.

## D. Attorney Fees On Appeal

▆▆▆ The Smiths request attorney fees on appeal pursuant to Idaho Code § 12–121. An award of attorney fees on appeal is proper only where this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably, and without foundation. *Electrical Wholesale Supply Co., Inc. v. Nielson,* 136 Idaho 814, 828, 41 P.3d 242, 256 (2001) (citations omitted). Although we are affirming the district court's grant of summary judgment, we do so for different reasons and, therefore, this appeal was not frivolous, unreasonable or without foundation. The request for attorney fees on appeal is denied.

## IV.

## CONCLUSION

The decision of the district court declaring the validity of the Smiths' Amendment on summary judgment and denying U.S.R.V.'s motion to dismiss is affirmed. We award costs on appeal to the Smiths.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.