129 P.3d 1223

**Mary HUGHES and Andrew Eker, Gwen and John Hanley, Blair Hull, David and Georgia Hutchinson and Terry Whittier, Plaintiffs–Counterdefendants–Appellants,**

v.

**George B. FISHER, LLC, an Idaho limited liability company, Defendant–Counterclaimant–Respondent.**

**George B. Fisher, LLC, an Idaho limited liability company, Plaintiff–Respondent,**

v.

**The Pothier Point, LLC, Defendant–Appellant,**

and

**The Pothier Living Trust; and Does I through X, inclusive, Defendants.**

No. 30269.

Supreme Court of Idaho, Twin Falls, November 2005 Term.

Jan. 27, 2006.

Williamson Law Office, PLLC, Hailey, for appellants. Ned C. Williamson argued.

Lawson & Laski, PLLC, Ketchum, for respondent. Edward A. Lawson argued.

TROUT, Justice.

This consolidated case on appeal involves two separate lawsuits: first, (the Prescriptive Easement case) the individual Appellants' (collectively referred to as Hughes or plaintiffs) claim of a prescriptive easement over property owned by Respondent George B. Fisher, LLC (Fisher) and, second (the Pothier case) Fisher's claim for title to, or easements over, property owned by Appellant Pothier Point, LLC (Pothier). Fisher's property is comprised of Tax Lots 7353 and 7354. In the Prescriptive Easement case, Hughes sought a prescriptive easement along a trail across Fisher's property that accessed the base of the Sun Valley ski resort. The district court rejected Hughes' claim, finding their use of the path was permissive, the public use exception applied, and Hughes failed to prove by clear and convincing evidence the other elements of a prescriptive right claim. In the Pothier case, Fisher sought a reformation of the warranty deed conveying Tax Lot 7353 to reflect an easement over the driveway and underlying utilities on a remnant parcel (Pothier parcel). Fisher also sought an easement by necessity and/or implication granting access and utilities through the Pothier parcel to Tax Lot 7354. Finally, Fisher sought title to the entire Pothier parcel based on adverse possession. The district court found for Fisher on the reformation and easement by necessity claims, but against Fisher on his adverse possession claim. The district court did, however, determine Fisher was entitled to an easement by prescription for his landscaping of the Pothier parcel. Hughes and Pothier timely appealed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Prescriptive Easement case

In the 1960s, the Pothiers sold to the Rickers Tax Lots 7353 and 7354, the property at issue in this consolidated case. The Rickers gave their neighbors permission to use an upper path which crossed their property to access Bald Mountain, but were unaware of a lower path (the Path). In 1975, the Rickers sold both lots to Dick Matthews. Sometime during 1975, others in the neighborhood began using the Path, but there was no evidence as to whether Matthews gave permission to use the Path. Matthews sold the property to Fisher in 1978. Fisher lived on the property from 1978 to 1992, during which time he and his family used the Path to access Bald Mountain. Apparently, Fisher gave permission to use the Path to anyone who asked and was friendly to other users. When Fisher moved off the property in 1992, he instructed his tenants, who also used the Path, to allow the neighbors and the public to use it. In 2000, Fisher proposed to develop the portion of his property over which the Path crossed. Hughes, opposed to the development which would have blocked their use of the Path, filed an action on August 14, 2000, to establish a prescriptive right to use the Path.

### B. The Pothier case

The 1966 warranty deed conveying Tax Lot 7353 to the Rickers contained the following language: "Access to lower part of western side of lot is guaranteed by easement use of thirty feet strip along northern side of adjoining property." The Pothiers built a house on the property for the Rickers and

constructed a driveway over, and underlying utilities through, the Pothier parcel, a small parcel of land the Pothiers continued to own. The driveway and the utilities continue to be located on the Pothier parcel where Pothier originally constructed them. In 1969, the Rickers also purchased Tax Lot 7354, a piece of land that borders Tax Lot 7353, from the Pothiers. Eventually, Fisher became the owner of Tax Lots 7353 and 7354. Unaware of who owned the Pothier parcel, Fisher made improvements by paving the driveway and landscaping both sides of it with berms, trees, shrubs, and an irrigation system in the early 1980s. Until August 2000, no one interfered with Fisher's use of the Pothier parcel, and no one has ever been required to pay taxes on the Pothier parcel. In August 2000, the City of Ketchum questioned whether Fisher had access to his property. In October 2000, Pothier wrote to Fisher, demanding Fisher cease interfering with Pothier's property rights. Fisher filed a complaint against Pothier in January of 2001, for reformation of the warranty deed, adverse possession, and easement by implication and/or necessity.

## C. The District Court decision

After various motions had been granted and preliminary matters determined in previous hearings, the district court heard arguments in May 2003 and on July 17, 2003, issued its Findings of Fact and Conclusions of Law and a Memorandum Decision. As to the Prescriptive Easement case, the district court determined Hughes failed to show by reasonably clear and convincing evidence their right to a prescriptive easement. Importantly, the court found the use of the Path by Hughes was impliedly permissive, precluding Hughes from acquiring prescriptive rights under Idaho law. The district court also concluded Hughes used the Path along with the public and did not perform an independent act to signify to Fisher they were claiming an adverse right. Finally, the court found Hughes failed to establish continuous use during the five-year period preceding the lawsuit.

Addressing the Pothier case, the district court concluded the 1966 warranty deed should be reformed to provide an access and utility easement for Tax Lot 7353 reflecting where the grantor Pothier actually placed the driveway and utilities back in 1966. The district court found reformation warranted because the deed was ambiguous on its face and also due to a mutual mistake of the parties to the deed. The court also determined Fisher was entitled to an easement by necessity for access and utilities to Tax Lot 7354. Finally, the district court ruled that while Fisher was not entitled to adverse possession of the remaining portion of the Pothier parcel, Fisher was entitled to a prescriptive easement for the landscaping he had done on the driveway area.

Later, Fisher filed a motion to amend to add "a claim for relief for a prescriptive easement to conform to the evidence adduced at the trial" that related to the landscaping easement. Fisher's original complaint did not allege a prescriptive easement for landscaping. Fisher also requested attorney fees and costs. Hughes and Pothier opposed both of Fisher's motions and also sought to amend the district court's Findings of Fact and Conclusions of Law. The district court denied Hughes and Pothier's motions, granted Fisher's motion to amend, and, concluding Fisher was the prevailing party, awarded Fisher attorney fees and costs because Hughes' Prescriptive Easement case was frivolous. Hughes and Pothier timely filed their notice of appeal.

## II. STANDARD OF REVIEW

A district court's determination that a claimant has or has not established a private prescriptive easement involves entwined questions of law and fact. *Hodgins v. Sales,* 139 Idaho 225, 229, 76 P.3d 969, 973 (2003) (citing *Marshall v. Blair,* 130 Idaho 675, 679, 946 P.2d 975, 979 (1997)). On appeal, this Court will set aside findings of fact only if they are clearly erroneous. *Id.;* I.R.C.P. Rule 52(a). Thus, if a district court's findings of fact are supported by substantial and competent, though conflicting, evidence, this Court will not disturb those findings. *Hodgins,* 139 Idaho at 229, 76 P.3d at 973. Also, this Court gives due regard to the district court's special opportunity to

judge the credibility of the witnesses who personally appear before the court. *Id.* Unlike our review of the district court's factual findings, this Court exercises free review over the district court's conclusions of law. *Id.* Consequently, we must determine whether the district court properly applied the legal requirements for an easement to the facts the district court found. *Marshall,* 130 Idaho at 679–80, 946 P.2d at 979–80 (prescriptive easement); *Davis v. Peacock,* 133 Idaho 637, 640, 991 P.2d 362, 365 (1999) (easement by necessity).

■ With regard to the reformation of the warranty deed issue, this Court will rely upon the trial court to weigh the evidence in determining whether a mutual mistake exists, since it is a factual issue. *Cline v. Hoyle & Associates Ins., Inc.,* 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985). In contrast, whether a contract is ambiguous is a question of law which may be freely reviewed by an appellate court. *Clark v. St. Paul Property and Liability Ins. Companies,* 102 Idaho 756, 757, 639 P.2d 454, 455 (1981). Once ambiguity is established, however, the interpretation of that contract is a question of fact which will only be set aside if clearly erroneous. *Id.*

## III. DISCUSSION

### A. Prescriptive Easement case

#### 1. Permission

■ An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Hodgins,* 139 Idaho at 229, 76 P.3d at 973 (citing *Abbott v. Nampa School Dist. No. 131,* 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991)). The term prescription refers to "the effect of lapse of time in creating or extinguishing property interests." 4 *Powell on Real Property* § 34.10(1) (Michael Allan Wolf ed., Matthew Bender) (2005). Because "it is no trivial thing to take another's land without compensation," easements by prescription are not favored by the law. *Simmons v. Perkins,* 63 Idaho 136, 143, 118 P.2d 740, 744 (1941).

■ In order to establish an easement by prescription, a claimant must prove by clear and convincing evidence use of the subject property that is (1) open and notorious, (2) continuous and uninterrupted, (3) adverse and under a claim of right, (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period of five years. *Hodgins,* 139 Idaho at 229, 76 P.3d at 973; *see* I.C. § 5–203. A prescriptive right cannot be granted if the use of the servient tenement was by permission of its owner, because the use, by definition, was not adverse to the rights of the owner. *Marshall,* 130 Idaho at 680, 946 P.2d at 980. Indeed, the rule is well established that no use can be considered adverse or ripen into a prescriptive right unless it constitutes an actual invasion of or infringement on the rights of the owner. *Simmons,* 63 Idaho at 144, 118 P.2d at 744.

■ In this case, the district court found Hughes had implied permission from Fisher to use the Path. Plaintiff Terry Whittier is the only plaintiff claiming to have used the Path before Fisher owned the property and the district court found him not credible due to inconsistencies in his testimony. It is well settled that, on review, this Court gives due regard to the district court's special opportunity to judge the credibility of the witnesses who personally appear before the court. *Hodgins,* 139 Idaho at 229, 76 P.3d at 973. All other plaintiffs began using the Path after Fisher purchased the property. Fisher testified he gave express permission to many individuals and his willingness to let his neighbors use the Path was common knowledge. Fisher worked in the ski industry and granted permission to promote business and "good neighborliness." When Fisher moved off the property in 1992, he instructed his tenants to continue to allow others to use the Path. Fisher's testimony was not contradicted by Hughes. Instead, Hughes argues their use was not permissive because they did not ask for or receive permission to use the Path. Hughes' argument would have merit if the district court's finding of permission was based on express permission. However, the district court found Hughes had implied permission to use the Path, and Hughes has

not shown that determination was clearly erroneous.

## 2. Public Use

 Even if there were some doubt about the evidence regarding Hughes' claim of open, notorious use of Fisher's property without permission, the district court also analyzed whether the "public use exception" applied. Generally, where a claimant establishes open, notorious, continuous and uninterrupted use under a claim of right for the statutory period, knowledge of the owner may be presumed. *Hall v. Strawn*, 108 Idaho 111, 112, 697 P.2d 451, 452 (Ct.App.1985). However, there are special considerations relating to notice to the owner when the claimant's use of the subject property is shared with the general public:

> Where, as here, the same degree of use upon which the adverse claim is based has been exercised indiscriminately by the general public, individual acquisition of a prescriptive easement has generally been held impossible. In such a case, the claimant must perform some act whereby the adverse nature of the claim is clearly indicated to the owner of the servient estate.

*Hall,* 108 Idaho at 112–13, 697 P.2d at 452–53. In such situations, mere use of property alone is insufficient to establish a private prescriptive easement; rather, the claimant must perform some independent act signifying to the owner the adverse user's claim. *Cardenas v. Kurpjuweit,* 114 Idaho 79, 753 P.2d 290 (Ct.App.1988), *vacated by* 116 Idaho 739, 779 P.2d 414 (1989); *Hall,* 108 Idaho at 112, 697 P.2d at 452. This independent act requirement is merely a common sense way of ensuring the prescriptive easement elements have been satisfied. By definition, a use must be open and notorious, continuous and uninterrupted, and adverse and under a claim of right *with the actual or imputed knowledge of the landowner* for five years before it can ripen into a prescriptive easement. When the claimant is using the land along with members of the general public, it would simply be unfair to impute knowledge to the landowner that the claimant is making an adverse claim. The law in Idaho is clear that the general public may not obtain a private prescriptive easement. *See State ex rel. Haman v. Fox,* 100 Idaho 140, 145, 594 P.2d 1093, 1098 (1979) ("[T]his court is of the opinion that the 'general public' or 'the people of the state of Idaho' as distinguished from specific individuals cannot, absent specific statutory authorization, acquire prescriptive rights to private property."). Fairness demands the landowner receive some type of "special notice" so the landowner can differentiate between an adverse claimant—who can seek a private prescriptive easement—and a member of the general public—who cannot—and take action to protect the landowner's property rights.

Another rule which has developed over time flows from this Court's opinion in *Simmons v. Perkins,* 63 Idaho 136, 118 P.2d 740 (1941), which created an exception to the general rule that the regular crossing of another's property is presumed to be adverse. In *Simmons,* we stated that where a landowner "constructs a way over [the land] for his own use and convenience, the mere use thereof by others which in no way interferes with his use will be presumed to be by way of . . . permission." *Id.* at 144, 118 P.2d at 744. In the instant case, there was much discussion below of the various presumptions, the shifting of burdens, and whether the exception even applied when the owner did not "construct" the way over the owner's land. Like the public use rule above, however, the rule from *Simmons* is merely another approach to analyzing whether the claimant has shown the basic prescriptive easement elements by clear and convincing evidence. To disentangle Idaho prescriptive easement law, we emphasize the need for courts to streamline their analysis by focusing simply on whether the five prescriptive easement elements have been satisfied based on the facts before them.

 In this case, the district court properly concluded Hughes used the Path along with the general public and performed no independent act that would have put Fisher on notice Hughes was claiming a prescriptive easement over his land. All of the plaintiffs themselves corroborated the public use of the Path by testifying that use of the Path was "common knowledge," that "everybody did it.

It was something that was common practice," and that many people used the Path because it was regarded as the neighborhood access to the mountain. One plaintiff even testified he rented property in the neighborhood in part due to his realtor's suggestion that he could use the Path. Thus, the district court's finding that there was public use of the Path was based on substantial and competent evidence and will not be disturbed.

Once such use by the public is established, the claimant is obligated to identify some independent act signifying the adverse claim to the landowner. There is simply nothing in the record indicating acts were committed that would have put Fisher on notice that Hughes' use was adverse. In fact, the district court found, "Plaintiffs each admitted that there was nothing about their respective uses of the Path that would have imparted to Fisher or his predecessors that they were claiming a right to use the Path." Hughes has not shown this factual finding was clearly erroneous. In the absence of some independent act, Fisher cannot be deemed to have been on notice that the plaintiffs were each claiming an adverse right. Accordingly, Hughes has failed to establish all elements of a prescriptive easement and the district court's decision on this matter is affirmed.

## B. The Pothier Case

### 1. Reformation of the Warranty Deed

In interpreting a deed, the court's goal is to carry out the real intention of the parties. *C & G, Inc. v. Rule*, 135 Idaho 763, 766, 25 P.3d 76, 79 (2001). If an instrument does not reflect the true intent of the parties due to mutual mistake, then reformation of that instrument may be the proper remedy. *Bilbao v. Krettinger*, 91 Idaho 69, 72–73, 415 P.2d 712, 715–16 (1966). "A mutual mistake occurs when both parties, at the time of contracting, share a misconception regarding a basic assumption or vital fact upon which the bargain is based." *Hines v. Hines*, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997). The court acts properly in reforming the instrument to reflect the agreement the parties would have made but for the mistake. *Bailey v. Ewing*, 105 Idaho 636, 640–41, 671 P.2d 1099, 1103–04 (Ct.App.

1983). What the parties actually intended is a question of fact. *Id.* at 641, 671 P.2d at 1104. The party alleging the mutual mistake has the burden of proving it by clear and convincing evidence. *Collins v. Parkinson*, 96 Idaho 294, 296, 527 P.2d 1252, 1254 (1974).

In the 1966 warranty deed to the Rickers, grantor Carl Pothier stated, "Access to lower part of western side of lot is guaranteed by easement use of thirty feet strip along northern side of adjoining property." However, Carl Pothier built the Rickers' home and constructed the driveway with the underlying utilities *diagonally* across the Pothier parcel. Thus, the easement described in the deed does not reflect the location of the driveway Carl Pothier himself constructed. Clearly, the district court correctly concluded the deed did not reflect the easement to which the parties had agreed. Accordingly, it was appropriate for the district court to reform the deed to reflect the true intention of the parties: the easement described in the deed should be along the location of the driveway and underlying utilities as constructed by grantor Carl Pothier. The true intent of Pothier and the Rickers is a factual determination that will not be disturbed on appeal unless clearly erroneous. Given the fact that Pothier himself was the one who created the deed description, sold the property to the Rickers and then promptly went out and built the driveway in a different location, the district court's conclusion is supported by substantial and competent evidence and is affirmed.

### 2. Easement by Necessity

This Court has quoted with approval the following analysis of the theory behind easements by necessity:

A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation.... It is a universally established principle that where a tract of land is conveyed which is separated from the highway by other lands of the grantor or surrounded

by his lands or by his and those of third persons, there arises, by implication, in favor of the grantee, a way of necessity across the premises of the grantor to the highway.

*Burley Brick and Sand Co. v. Cofer*, 102 Idaho 333, 335, 629 P.2d 1166, 1168 (1981) (quoting 17A Am.Jur. *Easements* § 58 (1957)); *see* 25 Am.Jur.2d *Easements and Licenses* §§ 30–31 (2005). One who claims an easement by necessity across another's land must prove "(1) unity of title and subsequent separation of the dominant and servient estates; (2) necessity of the easement at the time of severance; and (3) great present necessity for the easement." *Bear Island Water Ass'n, Inc. v. Brown*, 125 Idaho 717, 725, 874 P.2d 528, 536 (1994).

■ An easement appurtenant is a right to use a certain parcel, the servient estate, for the benefit of another parcel, the dominant estate. *Hodgins*, 139 Idaho at 230, 76 P.3d at 974. The Restatement of Property states the traditional rule that an appurtenant easement may not be used for the benefit of property other than the dominant estate. Restatement (Third) of Property, *Servitudes* § 4.11 (2000); *Christensen v. City of Pocatello*, 142 Idaho 132, 137, 124 P.3d 1008, 1013 (2005).

■ Here, the parcels of land involved in this case were all originally owned by Carl Pothier, so the first element of Idaho's easement by necessity test is satisfied. Pothier claims the district court erroneously granted an easement by necessity for Tax Lot 7354 based on the second and third elements, as (1) there was no necessity for the easement at the time of severance because the Rickers purchased Tax Lot 7354 for privacy, not further development; and (2) there is not great present necessity for the easement because access to Tax Lot 7354 is available through the express easement over the Pothier parcel to Tax Lot 7353 and then through Tax Lot 7353 itself.

Pothier's arguments fail for two reasons. First, an easement was necessary at the time of severance because Tax Lot 7354 was, and remains, a landlocked parcel lacking access adequate "for the purpose to which the property naturally might be put." *MacCaskill v.*

*Ebbert*, 112 Idaho 1115, 1119, 739 P.2d 414, 418 (Ct.App.1987) (noting public policy against landlocked properties). Second, an easement for Tax Lot 7354 continues to be necessary today even though Fisher also owns the contiguous Tax Lot 7353. The express easement granted in the 1966 warranty deed created an easement appurtenant to Tax Lot 7353, making that lot dominant and the Pothier parcel servient. Based on the general rule, the express appurtenant easement providing access and utilities to Tax Lot 7353 cannot be expanded to provide the same for Tax Lot 7354. The district court correctly concluded that using the Pothier parcel to access Tax Lot 7354 under the warranty deed would constitute an enlargement which is not allowed under Idaho law. For these reasons, the district court's finding of an easement by necessity for Tax Lot 7354 is affirmed.

### 3. Landscaping Easement

In this appeal, Pothier does not argue there was insufficient evidence to support finding a prescriptive easement for landscaping; rather, Pothier contends the district court erroneously granted Fisher's motion to amend, adding the prescriptive easement claim because that issue was not tried by the implied consent of the parties.

■ According to I.R.C.P. 15(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." "The purpose of Rule 15(b) is to allow cases to be decided on the merits, rather than upon technical pleading requirements." *Noble v. Ada County Elections Bd.*, 135 Idaho 495, 500, 20 P.3d 679, 684 (2000). "Implied consent to the trial of an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood the evidence to be aimed at the unpleaded issue." *M.K. Transport, Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980) (quoting *MBI Motor Co., Inc. v. Lotus/East, Inc.*, 506 F.2d 709, 711 (6th Cir. 1974)). For example, it has been held as

error for a district court to find the parties mutually rescinded a contract based on evidence supporting the parties' breach of contract claims where, "[h]ad the parties considered the issue of rescission to be before the court, *they may have been able to present other evidence, not relevant to the breach of contract claims,* which might have tended to rebut any inferences that the parties had rescinded the agreement." *M.K. Transport,* 101 Idaho at 349–50, 612 P.2d at 1196–97 (emphasis added). Upholding a district court's grant of a divorce based on willful desertion when such a claim was never alleged in the complaint, this Court offered the following guidance on determining prejudice:

> "A party cannot complain of variance between pleading and proof in the absence of a showing that he was misled thereby to his prejudice." There is no showing by appellant that he was misled in this regard, or that he was unaware of the facts upon which the finding was based. Thus, there was no error committed by the trial court in granting the divorce on a ground not initially plead, when the evidence fully sustained the finding.

*Losee v. Losee,* 91 Idaho 77, 79, 415 P.2d 720, 722 (1966) (quoting *Frost v. Mead,* 86 Idaho 155, 166, 383 P.2d 834, 840 (1963)). If a party can show prejudice by pointing to evidence it would have otherwise introduced or arguments it would have otherwise made, then that party may complain about a district court's finding based on an unpled theory.

The determination whether an issue has been tried with the consent of the parties is within the trial court's discretion, and such determination will only be reversed when that discretion has been abused. *Lindberg v. Roseth,* 137 Idaho 222, 226, 46 P.3d 518, 522 (2002). In reviewing an exercise of discretion, this Court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Id.*

In granting Fisher's motion, the district court correctly noted granting a motion to amend was within its discretion. It also appears the district court acted within the bounds of its discretion and exercised reason in reaching its decision: Pothier failed to show any real prejudice and the evidence to which Pothier did not object supported a finding of a prescriptive easement. On these facts, where a prescriptive easement can be thought of as a "lesser included" cause of action of adverse possession, it is difficult to see how Pothier could be prejudiced by the post-judgment amendment of the pleadings. The pleaded theory of adverse possession is virtually identical to the unpleaded but awarded claim of a prescriptive easement; the only real difference between the two is that adverse possession grants possession of the property, while a prescriptive easement merely allows the claimant use of the property. Thus, the grant of a prescriptive easement to Fisher is actually less of an encumbrance on Pothier's title than would be an award of title by adverse possession. Where an unpleaded theory relies on less evidence than a pleaded theory and results in less relief to the moving party, it is difficult to see how the grant of a Rule 15(b) motion will prejudice the nonmoving party. Because Pothier could show no prejudice here, the district court's grant of Fisher's motion to amend his complaint was not an abuse of discretion.

### C. District Court Award of Attorney Fees

The decision to award attorney fees rests in the discretion of the trial court, and the burden is on the party disputing the trial court's determination to show an abuse of discretion. *Brown v. Miller,* 140 Idaho 439, 445, 95 P.3d 57, 63 (2004). I.C. § 12–121 allows a court to award attorney fees to the prevailing party when the court is "left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). The determination of who is the prevailing party for purposes of an award of attorney fees is within the trial court's discretion. *Farm Credit Bank of Spokane v. Wissel,* 122 Idaho

565, 568, 836 P.2d 511, 514 (1992). I.R.C.P. 54(d)(1)(B) provides that when a district court determines a party partially prevailed, the district court may "apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained."

The Prescriptive Easement and Pothier cases were combined for all purposes. Nevertheless, the district court awarded Fisher attorney fees related only to the Prescriptive Easement case. Early in the proceedings, on October 17, 2001, the district court dismissed Fisher's counterclaim for monetary damages in the Prescriptive Easement case. From that point forward, the case proceeded only on Hughes' argument that they were entitled to a prescriptive easement. The district court's decisions denied any recovery to Hughes on their claims, so Fisher was clearly the prevailing party. The award of fees to Fisher was based on the district court's determination that Hughes pursued their prescriptive easement claim frivolously because they should have known upon completion of their depositions that none of them committed any act which would have imparted notice to Fisher that their use of the Path was different from that of the general public. The district court therefore awarded attorney fees for services rendered after plaintiffs' depositions were completed, which took place after the dismissal of Fisher's counterclaim. The district court did not, however, subtract attorney fees related to settlement negotiations between Fisher and Hughes. Because we affirm the district court's determination that the Hughes' case was frivolous, we conclude the district court did not err in awarding attorney fees related to settlement negotiations. To hold otherwise would reward Hughes for pursuing a frivolous claim and punish Fisher for attempting to settle a frivolous claim brought against it. Consequently, we affirm the district court's award of attorney fees, including those fees incurred during negotiations to settle this frivolous suit.

### D. Attorney fees on Appeal

"An award of attorney fees on appeal is proper only where this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably, and without foundation." *Smith v. U.S.R.V. Properties*, LC, 141 Idaho 795, 800, 118 P.3d 127, 132 (2005). Because we affirm the district court's reasoning behind its award of attorney fees to Fisher under I.C. § 12–121, Fisher is entitled to attorney fees related only to the appeal of the Prescriptive Easement case and not to those fees engendered by the appeal of the Pothier case.

## IV. CONCLUSION

The district court's denial of a prescriptive easement in Hughes' favor is affirmed, as the plaintiffs failed to show the required elements by clear and convincing evidence. Also, the district court's finding of an easement by necessity for Tax Lot 7354 is affirmed, as this parcel would otherwise remain landlocked. Likewise, we agree with the district court's reformation of the 1966 warranty deed to provide for an easement along the current location of the driveway and utilities for Tax Lot 7353 and we uphold the decision to award a prescriptive easement for landscaping across the Pothier parcel. Finally, we affirm the award of attorney fees to Fisher for those fees incurred during his defense of the Prescriptive Easement case after the plaintiffs' depositions, including attorney fees incurred during settlement negotiations. We award Fisher attorney fees related to the appeal of the Prescriptive Easement case, as well as costs on appeal.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.